UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JONAH A. BUEHNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:22-cv-045-PPS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## **OPINION AND ORDER**

Jonah Buehner has appealed the denial of his application for Social Security disability insurance benefits, and in doing so, he claims that the ALJ committed three errors which require a reversal of her decision. I will limit my discussion to one: whether the ALJ erred in her determination of Buehner's residual functional capacity (RFC) by cherry-picking evidence and failing to support her decision with substantial evidence. Because I find that the ALJ erred in determining the RFC, I will reverse the ALJ's decision and remand on this issue.

### Background

Jonah Buehner applied for disability insurance benefits on June 13, 2019, claiming that he was disabled as of July 1, 2009. [AR 17.][1] His claims were denied

---

[1] **Error! Main Document Only.** The administrative record [AR] is found in the court record at docket entry 12 and consists of 639 Bates-stamped pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers in the bottom right-hand corner of each page, rather than the court's Electronic Case Filing page number.

initially and denied again upon reconsideration. After that, he requested and had a hearing before an Administrative Law Judge via telephone due to concerns over COVID-19. [AR 613–39.] A couple months later, the ALJ issued her written decision once again denying benefits. [AR 17–29.] Buehner then took his case to the Social Security Appeals Council which denied his request for review. [AR 3.] Buehner now seeks review of that decision. [DE 1.]

In the written decision, the ALJ determined that Buehner has the severe impairments of asthma; autism spectrum disorder; major depressive disorder single episode (severe without psychotic features); and generalized anxiety disorder. [AR 20.] The ALJ then determined that Buehner did not meet any of the applicable listings for disability. Specifically, the ALJ examined listings 3.03 (asthma), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.10 (autism spectrum disorder). [AR 20–21.]

At the next step, the ALJ determined Buehner's residual functional capacity. She determined that Buehner is capable of performing work at the light level as defined in 20 CFR § 416.967(b), with some exceptions: he can occasionally work with concentrated exposure to fumes, dusts, odors, gases, and poor ventilation; he can perform work that can be learned in 30 days or less, with simple routine tasks, simple work-related decisions, routine workplace changes, and with no production pace work; he can occasionally interact with coworkers and supervisors; and he can have no interaction with the general public. [AR 22.] For present purposes, I won't repeat the ALJ's detailed

description of the medical evidence included in her written decision. [*See* AR 22–27.]

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert, who testified that a hypothetical individual with Buehner's RFC would be able to perform a range of unskilled light occupations that exist in significant numbers in the national economy. Those jobs included a routing clerk, photocopy machine operator, or collator operator. [AR 28–29.] Accordingly, the ALJ found that Buehner is not disabled within the meaning of the Social Security Act.

## Discussion

I'll start, as is customary, with the standards that govern my decision-making in this appeal. In a Social Security disability appeal, my role as district court judge is limited. My job is not to determine from scratch whether Buehner is disabled. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). If substantial evidence supports the ALJ's factual findings, they are conclusive. 42 U.S.C. §405(g); *Shideler*, 688 F.3d at 310. The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Given this modest standard, the review is a light one. But, of course, I

cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, my review is also guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented," she "must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Buehner argues that the ALJ erred in evaluating the applicable Social Security listings, the medical opinion evidence, and the formulation of his RFC. [DE 15 at 12–26.] I will focus on the latter of those claims — that the ALJ cherry-picked evidence bearing on her determination of his RFC. *See id.* at 19–26.

Social Security Ruling 96-8p proscribes an ALJ's duties in assessing a residual functional capacity:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

SSR 96-8p, 1996 SSR LEXIS 5, at *20 (July 2, 1996) ("Narrative Discussion Requirements"). An omission of this discussion is enough to warrant reversal of the ALJ's decision. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). In addition, an ALJ may not point to evidence that supports her conclusion while ignoring

evidence to the contrary. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Buehner argues that the ALJ did just that: cherry-picked evidence that supported her conclusion that he was not disabled while ignoring substantial evidence to the contrary. In support, Buehner points me to the July 2021 statement from Ms. Candy Pease, Buehner's behavioral consultant. [AR 612.] Recall that Buehner suffers from autism. As a consequence, Ms. Pease stated that Buehner's goals include "fundamental social communication," and task and time management. *Id.* She stated that Buehner "is a good student but he refuses to speak with his professors, avoiding all superficial or casual interactions with other people. He prefers to isolate to his room." *Id.* She opined that Buehner would need "significant coaching and encouragement to speak at an interview and would likely fail an interview process." *Id.* She further opined that Buehner would need significant job support and job coaching to secure and maintain employment; and, to do so, he would also require a "job coach" to communicate with his supervisors and advocate on his behalf. *Id.* Ms. Pease stated that Buehner refuses to do tasks, even if those tasks are integral to perform a specific job. *Id.* She stated that he is very concrete in his thinking and will frequently decide not to complete at ask, and "[n]o amount of encouragement or reasoning will change his decision." [AR 612.] Finally, she opined that Buehner "is not capable of competitive employment but may

-5-

benefit from accommodated work," provided he receives significant job coaching, along with support from his supervisors. *Id.* Importantly, Ms. Pease was not opining based on a snapshot. The opinions came instead from her *three-year* relationship with Buehner. And during those three years, they met every week for at least two hours. *Id.*

Evidently, the ALJ did not find Ms. Pease's statement to be persuasive. She pointed out that statements separately contained in Ms. Pease's service notes do not support such a level of impairment, "as improvement in communication and task completion is noted" in those records. [AR 27 (citing AR 488–538).] The ALJ noted that Ms. Pease has treated Buehner but is not a psychologist or psychiatrist, and she has not provided him any job coaching. [AR 27.] The ALJ further observed that Buehner's goals are not pertinent to determining disability, Ms. Pease's statement appears "largely based on the claimant's subjective reports and do not include supporting clinical findings or observations," and that other evidence reflects that Buehner is able to "interact sufficiently to [sell] his artwork, albeit under substantial gainful activity levels." *Id.* Ultimately, the ALJ concluded that Ms. Pease's statement did not address Buehner's specific functional limitations, that Ms. Pease is not a vocational expert, and that her statement lacks substantial support in view of other evidence in the record. *Id.*

As prefaced, Buehner asserts that the ALJ erred by cherry-picking evidence from Ms. Pease's treatment notes, improperly relied on minor improvements in his conditions, and failed to consider the supportability of his subjective complaints. Buehner argues that Ms. Pease's statement should be evaluated under 20 CFR

§ 404.1520c as a medical opinion. [DE 15 at 17–18.] However, medical opinions, as defined by the regulations, require that the opinion identify specific functional limitations. 20 CFR § 416.913(a)(2). Ms. Pease's statement did not include any functional limitations; thus, the ALJ correctly found her statement was not a medical opinion. However, the ALJ did evaluate her statement, and that evaluation included impermissible cherry-picking.

The underlying treatment notes that the ALJ cited reflect Buehner's continued struggles with social interaction and task-avoiding behaviors. On January 9, 2020, Ms. Pease indicated that Buehner "does not grasp the concept of social interactions with peers." [AR 501.] On January 20, Ms. Pease stated that Buehner "struggles with empathy and other people['s] perception of him." *Id.* In a summary of his behavioral progress, Ms. Pease observed that Buehner is "getting better at completing projects but not things around the house." [AR 502.] One year later, on January 5 and 7, 2021, Ms. Pease stated that Buehner "continues to struggle without a schedule and structure," and that he "struggles with his social communication and giving a good explanation of what he is thinking. He also struggles with communicating his wants and needs effectively." [AR 503.] On January 12, Ms. Pease noted that Buehner struggles with social communication, asking for help, and understanding the need to communicate with others. *Id.* The end of the note mirrored verbatim her note from a year earlier. [AR 504.]

In fact, all of Buehner's treatment notes from Ms. Pease, dated December 2020 through January 2021, end with that exact statement: "Jonah is getting better at

completing projects but not things around the house." [AR 502, 504, 506, 507, 509, 512, 514, 516, 518, 520, 522, 524, 526.] Peeling back a layer, however, Ms. Pease's more detailed narratives from Buehner's individual treatment sessions reflect that he consistently reported struggles with communication and task completion throughout this period. [*See, e.g.*, AR 511 ("Jonah needs to be pushed or have someone help with accountability to meet any tasks or make any completions with his work.") (5/26/2020); *id.* ("Jonah struggles without a schedule and structure. Jonah struggles with his social communication.") (5/28/2020); AR 521 (same) (10/15/2020); DE 525 (same) (12/10/2020); *id.* (same) 12/12/2020).] The only progress note indicating any improvement in communication is from December 3, 2020, when Ms. Pease stated that Buehner "is doing better with communication and task completion." [AR 525.] That said, the remainder of the notes from that month repeatedly indicate that he continues to struggle with social communication, understanding the need to communicate with others, and completing tasks without close supervision. *Id.* Consideration of the full narrative treatment notes thus suggests that, while some improvement in Buehner's communication and task completion was noted, those observations were outliers. The lion's share of Ms. Pease's observations reflect Buehner's continued struggles with communication, social interaction, and task completion, suggesting that the ALJ cited only to instances where Ms. Pease suggested Buehner's conditions were "improving," without any explanation of her evaluation of the full narrative treatment notes.

    Ms. Pease's statements and underlying treatment notes are supported by

testimony from Buehner's father, Noah Buehner, which indicates that his son has great difficulty advocating for himself or effectively communicating his needs. [AR 630–31.] Buehner's father testified that he regularly had to advocate on Buehner's behalf, as he was incapable of doing so himself. *Id.* He also testified that Buehner does not ask for help or communicate his needs to others, and that he requires someone monitoring him to advocate on his behalf. *Id.*

Moreover, while the ALJ found that the consultative examiner's opinion did not provide functional limitations, it appears that opinion also supported Ms. Pease's statements regarding Buehner's continued struggles with social communication and task completion. The consultative examiner, Dr. Amanda L. Mayle, noted that Buehner presented with "difficulty with nonverbal behaviors and social interactions." [AR 472.] Dr. Mayle observed that he presented with "significant mood and behavioral instability that do appear to be affecting his functioning." [AR 475.] She also found that his mood was depressed, his affect was shy and withdrawn, and his thought content included overvalued ideas, obsessions, phobias, and preoccupation. [AR 472–76.]

The ALJ found that Buehner has a "moderate limitation" in interacting with others but failed to acknowledge or discuss Ms. Pease's treatment notes and statement reflecting the significant difficulty he has with social communication, asking for help, and understanding the need to communicate with others. [AR 21.] The ALJ found that although treatment records "show some anger issues and struggles with social norms," he was able to ride the school bus by himself and was able to converse when the topic

discussed interested him. *Id.* The ALJ also noted that he was cooperative with the consultative examiner. *Id.* However, there is no meaningful discussion of Ms. Pease's progress reports, which indicate continued struggles with social interaction. *Id.* The ALJ also failed to explain how Buehner's ability to ride the school bus by himself in high school contradicts the level of social limitations he now alleges, or how his cooperation with a consultative examiner contradicts his alleged social limitations. This is particularly important considering that Buehner's social limitations appear to stem predominately from his difficulties initiating social interaction and responding to unplanned social interactions. [*See* AR 500–26.] As noted above, while the consultative examiner found Buehner to be cooperative, she still noted that he was shy and withdrawn with significant mood and behavioral instability and difficulties in social interaction. [AR 472–76.]

      The ALJ also relied on educational notes that indicated Buehner is "bright and creative," and "an excellent writer and artist" with superior reading and written language skills. [AR 25.] The ALJ noted that he was able to attend four college classes in person on campus, and again reiterated that his conversational skills increased when the topics interested him. [AR 26.] Buehner similarly testified that when he attends classes on campus, he avoids people and does not interact with anyone. [AR 626–27.] Indeed, Ms. Pease met with Buehner on campus multiple times in the months prior to the start of classes to walk the campus and find his classes, as well as to find quiet places for him to go when he gets anxious. [AR 430, 432, 434.] Thus, considering the

multiple treatment notes and statements from examining and treating sources reflecting Buehner's continued struggles with social communication, the ALJ failed to adequately explain how an ability to attend four classes on campus and navigate campus after multiple trips with his behavioral consultant contradicts his social difficulties with communication.

The ALJ further erred in finding that Buehner is "able to interact sufficiently to [sell] his artwork, albeit under substantial gainful activity levels," as part of her determination that he is less limited than he alleges in social interactions. [AR 27.] Buehner testified that he has sold fewer than ten digital art pieces. [AR 622.] There is no evidence that Buehner had to interact socially with anyone to sell his digital art, as digital art is frequently sold online and would require little, if any, social interaction. In other words, the ALJ has failed to adequately explain how selling a few pieces of art online amounts to social communication skills less limiting than Buehner alleges.

The ALJ also failed to build a logical bridge from the evidence to her conclusion. The ALJ repeatedly stated that Buehner's subjective symptoms related to task completion and social interaction are contradicted by his ability to attend college classes, his high grades, his ability to successfully perform serial sevens, and the fact that he was described as "intelligent." With all due respect to the ALJ, these examples miss the point. Autism is not defined by intellectual disability. In fact, the DSM-V does not include intellectual impairments as a symptom of autism.[2] Instead, signs of autism

---

[2] *See* Autism Research Institute, *What is Autism?*, AUTISM.ORG, https://www.autism.org/what-is-autism

include deficits in social communication and interaction, as well as closely focused interests. Buehner's ability to obtain good grades in classes that he is passionate about does not speak to his ability to interact socially with others or his ability to complete tasks on his own. Buehner's father testified to it being "a lot of work" to keep him organized with his classes and assignments and ensuring Buehner finished assignments. [AR 630.] To that point, his father testified to having to remind Buehner which classes are on which days, what assignments are due, and when assignments are due. [AR 631.] He also testified that Buehner does not advocate himself and does not have a phone, so his father frequently communicates with his professors and assists Buehner by making phone calls to facilitate what he needs for his education. *Id.* Yet the ALJ ignored all this, providing no discussion of Buehner's need for extra support to obtain his grades and complete tasks, nor did the ALJ provide any explanation as to how his intellect or grades translated to improved social communication.

The ALJ also confusingly seems to correlate being cooperative with an examiner and having the ability to relate to others with being able to concentrate and having adequate memory and judgment. But the former has little to do with the latter. Buehner's social communication deficits are repeatedly described in the medical record as stemming from an inability to express his needs to others, as well as issues with authority or any situations that he sees as a threat to his control — all of which are markers of someone suffering with autism. In short, I fail to see how being cooperative

---

(last visited Nov. 18, 2022).

with an examiner on one occasion disproves a record that is replete with references to Buehner having substantial limitations with social interactions.

Finally, the ALJ appears to conclude that Buehner's social deficits are less limiting than he alleges because there is "no indication he required accommodations because of social issues" as a college student. [AR 26.] As repeatedly noted in the record, Buehner's social communication limitations relate to his inability to advocate for himself or express his wants and needs effectively. [*See, e.g.*, AR 503.] It is unclear what accommodations a college campus could provide for such limitations. The ALJ has failed to adequately explain how a lack of social accommodations indicates Buehner is not limited in his ability to communicate socially.

In sum, the ALJ erred by failing to support the RFC determination with substantial evidence, by failing to build a logical bridge from the evidence to her conclusions, and by impermissibly cherry-picking evidence to support her decision. On remand, the ALJ should properly analyze all the evidence in the decision and support her analysis with evidence in the record. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Buehner. He can raise those issues directly with the ALJ on remand.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Buehner's application for Social Security disability benefits is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**

ENTERED: November 18, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT